This morning our first case on the agenda is agenda number seven, number 130470, People of the State of Illinois v. Abdul Malik Muhammad. Counsel for the appellant. Morning, may it please the court, counsel. I'm Assistant Attorney General Josh Schneider on behalf of the people of the state of Illinois. The court should reverse the judgment of the appellate court for two reasons. First, the appellate court erred when it reversed the circuit court's order dismissing the case referred by the Torture, Inquiry, and Relief Commission because the petitioner had failed to state a claim for relief under the Torture, Inquiry, and Relief Commission Act. And then second, the appellate court, or rather the appellate majority, then further erred when it reversed the circuit court's orders denying the petitioner's motions to rescind the special prosecutor's appointment because the petitioner had failed to prove that the special prosecutor had an actual conflict of interest in the case, as would warrant removal under section 3-9008A10. With the court's leave, I'd like to start with that first issue, whether the circuit court properly dismissed the case for failure to state a claim, because if the circuit court properly dismissed the case, then there's no need for a remand, and if there's no need for a remand, it's moot. Counsel, I have a question about that. So is there within the statute a mechanism by which the special prosecutor can even bring a motion to dismiss the claim? Under the Act? Yes. So the Act doesn't specify any of the procedures once the case has been referred by the commission, but I believe it was People v. Mitchell, the first issue, that the people may challenge the referral once it reaches the circuit court. Because, of course, I believe that the motion was called a motion to terminate the case, so it could be construed, I guess, as a motion to terminate the case as much as it was wrongly deferred. It could also be sort of seen as a 2-615 motion to dismiss for failure to say a claim. But in either event, as Petitioner points out, proceedings under the Act are civil in nature, and so there's no reason under the Act that the normal proceedings on a civil matter, where a plaintiff has failed to state a claim, wouldn't apply under the Act. And here, to state a claim under the Act, as was pointed there, there were two requirements, two sort of substantive allegations that the Petitioner had to make. He had to first assert that, quote, he was tortured into confessing to the crime for which the person was convicted. Here, that's the murder of Damone Mims. And then he further had to assert that, quote, the tortured confession was used to obtain the conviction. And I'd like to focus on that first requirement, because that first requirement, that Petitioner asserted he was tortured into confessing to the murder of Damone Mims, Petitioner simply did not make that assertion. Well, counsel, before you get there, so I'm talking about Section 50 of the Act, and it talks about if the commission concludes that there's sufficient evidence of torture, then it goes to merit judicial review. The commission then asks the chief judge to Cook County for assignment to a trial judge for consideration. And then Section 50 goes into the type of proof that the trial court can consider. And what I don't really see is any mechanism or anything indicating that there's this option of not moving forward and having a hearing on what has been sent by the commission once they make their determination. That is certainly true. The Act does not specify a procedural mechanism to dismiss claims that, as alleged, fail to state a claim. Here, the commission, in its referral decision, acknowledged that Petitioner had not asserted that he actually made the statements attributed to him as a result of torture. And so it was no different than if the commission had said, he's failed to state a claim, but we're referring it nonetheless. That's outside of the jurisdiction of the commission to refer. And because the people aren't actually a party to the proceedings before the commission, their first opportunity to address the sufficiency of the allegations is when it lands in the circuit court. It would be very odd if the General Assembly intended to have a hearing on a claim that was non-cognizable under the Act, simply because it was referred. For example, had the commission referred simply a Brady violation. He's raised a Brady claim. That claim is, as the commission, I think the courts all agree, just a Brady claim is not a basis for under the Act. So it would be odd for the General Assembly to mandate a hearing on a Brady claim that cannot possibly provide relief under the Act. So this is really a, it is a motion to dismiss for failure to state a claim, but really it's directed at the referral decision of the commission in the first place. So I think that's why it was characterized as a motion to terminate the case. Otherwise you'd be having entirely pointless hearings, evidentiary hearings on claims that, as alleged, could not possibly state a claim. This is exactly that kind of claim. Here he did not assert that he was tortured into confessing to the murder of Damone Mims. So the legislature didn't want the commission to make that decision. You have to have the vote of, what is it, five, at least five of the eight. So the legislature didn't want the commission to make the decision on whether or not it was a cognizable claim. Well, so the commission's job is to first determine whether it's a cognizable claim. But if the commission gets that wrong, that's not unreviewable. And the first opportunity to review that decision is in the circuit court when the people are first brought into the case and it becomes an adversarial proceeding. Because the commission's act to ever be corrected, the court would have to have evidentiary hearings on claims regardless of whether they're actually cognizable under the act. And again, here Petitioner did not allege a cognizable claim. Rather than say he was tortured into confessing to the murder of Damone Mims, he said he was tortured but never confessed. In fact, he said he was tortured and never gave any statement of any kind as a result of the end of the case. That is not a claim of torture under the act. And so because it was not a claim of torture under the act, it was not properly referred by the commission. It was not properly before the court in its role under the act of reviewing claims of torture. Based on defendants' repeated assertions that he did not confess. Exactly. Those were his assertions both before the commission and before the circuit court. And we list a collection of those in our opening brief at pages 35. Did he deny making any statement at all? Yes. Repeatedly. And that's, as I said, that's sort of the end of the case. The act only provides relief for someone who asserts that they were tortured into confessing to the crime for which they were convicted. But what about defendant's representation that certain things he allegedly said were used by the prosecution? What do we do with that? Sure. So that's a claim that the prosecution presented false evidence. The commission has repeatedly said in its opinions that a claim that a person was tortured but did not confess or a claim that a person, the police fabricated statements and those were presented, those may be a due process violation, but they're not statutory claim of torture. As this court explains in Fair, the cause of action under the act is very narrow. It is a specific statutory cause of action only to address claims of torture as defined under the act. The person has a different claim, a claim of a Brady violation, a claim of an approved violation. Those claims may be raised in a different vehicle, such as a post-conviction petition. And in fact, petitioner is, I believe, currently litigating his Brady claim in a successive post-conviction petition. So it's not that those aren't violations of the constitution. It's that they are not cognizable under the act. And so to the extent that the... But that they allegedly occurred can be considered in terms of analyzing the torture claim. I mean, that's what Fair says. So yes, but I would note that this kind of constitutional violation is one that if you allege it, you've played yourself out of court under the act. Because if your claim is, I never made a statement, to consider that in support of your claim of torture is to, if we take that as true, then what you're saying is I was not tortured and confessed. Oh, I was talking about the Brady claim. Yes, absolutely. So for example, the commission made clear, and to make this brief now, that to the extent that it considered the allegations of a Brady violation, it was considering those allegations only to the extent that they were probative of a torture by a Chicago police. I don't know how much probative value it has that county employees in 2001 committed a discovery violation. That would show that Chicago police tortured someone a year earlier, but to the extent that it had probative value, that's what they considered it for. But petitioner did not allege that he was tortured into confessing to the crime for which he was convicted. He said, I didn't make any statements as a result of the torture. And that's the end of his claim. Now, he does focus to sort of evade that first requirement under the act. He focuses on the second requirement, that the tortured confession was used to obtain the conviction. And that's also the basis for the appellate court's decision below. But the problem is that both the appellate court below and petitioner here construes that phrase, tortured confession in isolation from the rest of the sentence. Because of course the sentence is that a person has to assert that he was tortured into confessing to the crime for which he was convicted, and the tortured confession was used to obtain the conviction. So in section 5.1, a tortured confession refers to the product of someone having been tortured into confessing to the crime for which they're convicted. If the person was not tortured into confessing, then there is no tortured confession. And to try and sort of get around that statutory context, the appellate court and petitioner looks to outside the statute altogether, to the administrative definition of a tortured conviction. I wish they'd say, well, that encompasses statements that a petitioner did not make. And there are sort of two problems with that argument. First, the commission itself disagrees with petitioners and the appellate court's construction of its regulatory definition. I direct the court to page 6 of the commission's amicus brief, where it agrees with the people that it has no authority to refer claims that, quote, contend only that police officers either fabricated confessions or tortured claimants without inducing confessions. And that position is entirely consistent with the commission's decisions dismissing claims of torture submitted to them. In decisions like Coke's, Fernandez, Hampton, Dixon, Buckner, the commission has been fairly consistent that if you say I was tortured but didn't confess, you fail to state a claim. Here, the commission thought that petitioner was pleading in the alternative that he had been tortured and did not confess. But that was erroneous as a factual matter. He has never asserted that he confessed or gave any statement as a result of torture. And it's also erroneous sort of as a matter of law. The reason that we have alternative pleading in certain circumstances is that there are alternative bases for relief. So for example, if I'm convicted of an offense in the file of post-conviction petition, I can both raise a Brady claim saying that the prosecution failed to turn over exculpatory evidence to my attorney, and I can also raise a ineffective assistance claim saying that if that material was turned over to my attorney, then counsel's ineffective for not using it at trial. And the reason that I can raise those two mutually exclusive claims, the evidence either was or was not produced to my attorney, but I can raise both of those claims because both of those are viable bases for relief under the Post-Conviction Hearing Act. They're both constitutional violations. And so if it goes to an evidentiary hearing, if I prove one or the other, I'm entitled to relief. But under the Act, there is only one basis for relief. That is the basis identified in Section 5.1, that a person was tortured into confessing to the crime for which they were convicted, and that tortured confession used to obtain the conviction. If a person alleges, I was tortured into confessing, and I was not tortured into confessing, that second set of allegations does nothing. It does not provide any basis for relief. All it does is undermine their credibility. And if they only raise that second set of allegations, then they simply pledge themselves out the court. And that's what happened here. Petitioner was adamant that he never said anything, and that means that he failed to state a claim of torture under the Act. To the extent that the Commission's regulatory definition could be construed as including as confessions under the Act statements that a petitioner did not make, then it is simply contrary to the plain language of Section 5 and therefore invalid. Because of course, an administrative agency has no authority to broaden or narrow the scope of its enabling statute. We can't simply write over statutory language with regulatory language, essentially. Is the Court's own deference to the Commission's interpretation? The Court owes deference to the Commission's interpretation when there is some ambiguity in the statute, and the administration is using its expertise to clarify that ambiguity. But the Court cannot give any deference to an administrative definition that is actually to the plain language of the statute. As were petitioner's construction of the definition correct, it would be contrary to the statute. Now, again, we know that the Commission doesn't apparently read its definition that way. Again, Page states its brief and the opinions that we cited earlier. So, Counsel, according to the Commission, the definition of a tortured confession includes any incriminating statement, vocalization, or gesture alleged by police or prosecutors to have been made by a convicted person that the convicted person alleges were a result of interrogation that the convicted person claims included torture, right? That's correct. And the Commission doesn't understand that, apparently, to mean statements that the petitioner denies making. So, to the extent that the Commission's representation of what is required, that a person actually have asserted that they were tortured into making a statement against themselves, then the definition is fine. To the extent that it is saying that a person has confessed to a crime, even if they never said anything, then it is simply contrary to the plain language of the act. But that is included in the Commission's definition. It seems to include gesture, vocalization, alleged by police or prosecutors. Yes, I agree. So, that's why we know. To the extent that the Commission is incorrect in construing its own regulation, and in fact it does require, compel the construction of the regulation as including statements that a petitioner did not make and denies making, then it is contrary to Section 5's plain language. Because Section 5 says the person has to assert that he was tortured into confessing to the crime for which he was convicted. If he does not assert that, he has not stated a claim. If he says, I was tortured, but I didn't say anything, and police then fabricated a statement, and they attributed that statement to me, he has not stated the claim under the act. He stated a constitutional violation that he can raise in a motion of suppression, so this is a fabricated statement by the due process of violation of NACU if the prosecution knew that it was false. It could be a Brady violation if they knew it was false and failed to produce the evidence, but it is not a claim of torture under the act. If there are no further questions about the cognizability of his claim under the act, I'll turn briefly to the question of whether it was a conflict. Petitioner had to show an actual conflict of interest. In order to do that, he needed to provide sufficient facts and evidence. The appellate court found a conflict on the ground that the special prosecutor had actually participated in the original prosecution, assuming for the sake of argument that actually could be a basis for an actual conflict. There was actually no evidence in the record that the special prosecutor had any involvement in Petitioner's original prosecution. The record contains only the special prosecutor's denials of any involvement in the prosecution. And so, to the extent that the appellate majority said that, well, there was an actual conflict here because the special prosecutor admitted that he was involved, that's simply incorrect, as I believe there's some point to that. So, unless there are any questions on that issue either, for the reasons we've just gone through as well as the questions in our brief, we'd ask that the court reverse the judgment of the appellate court and affirm the dismissal of the case. Thank you. Thank you very much, counsel. Counsel for the appellate. Good morning. Good morning. May it please the court and counsel. Candace Gorman for Mr. Abdul-Malik Mohamed, a man who was tortured, framed, and wrongly convicted for the murder of Mr. Menz. And I just want to start out by saying- Counsel, may I ask you to speak up a little louder and maybe into the microphone? Thank you. Thank you. Is that better? Clearly, the Illinois Attorney General's Office does not know what to make of this case. They have taken both sides. We have the Attorney General's Office representing the state's attorney's office and saying that Mr. Mohamed does not have a claim before this court, a torture claim. And they're also representing, in an amicus brief, the Torture Commission and asking this court to uphold Mr. Mohamed's claim of torture and let him go ahead to hearing. I think that first, Mohamed is asking the court to uphold the appellate court's decision, remand the tort claim for hearing, and uphold the decision to remove Mr. Milon. The primary objective of a statutory construction, as this court has held in fair, is to ascertain and give effect to the intent of the legislature. Here, the intent was clear. To cure the illegal effects of police torture, protect victims from the effects of that torture, which included statements that the victim asserts were claimed to have been made during the torture and used to convict them at the trial. The term torture confession is a term of art that was used in the statute but not defined. Therefore, under our legislative process, the term torture confession was defined in the administrative rules process and properly promulgated by JCOC, the Joint Committee on Administrative Rules, and duly and unanimously authorized through that process. The definition of torture confession that appears in the code is not just an interpretation by the through the rulemaking process that was ultimately approved by the legislature. And the legislature defined torture confession to be any incriminating statement, vocalization, or gesture that the police or prosecutors claim that the convicted person made and that the convicted person claims was the result of torture, whether they admit to saying it or not under the definition. Counsel, can we back up a little bit? I asked the opposing counsel about this and I want to get your take on it as well. Was it proper for the special prosecutor to file this motion to dismiss after it had been sent down by the commission? Our position is it was not proper. Once the commission sends the, refers the case to the court, that's to have a hearing and this court held that I believe, was it actually the Pell Court held that in the Johnson case, that you're entitled to a hearing once that referral goes through. And the Turk Commission did a multi-year review of Mr. Muhammad's case. They reviewed everything and determined that he fell within the statutory definition that they have and that he was entitled to have a hearing. And they certainly also found that they had severe reservations as to his credibility, but therefore sent it to the court to resolve the issue, the factual issues, the evidentiary issues, the issues of credibility. But what happened here was there's a legal issue, a statutory interpretation issue that is a threshold issue, it seems to me. Where was that supposed to get decided? The commission itself can't, did the commission interpret the statute? Is that where it ends? Or is it for the circuit court and the courts to determine a question of statutory interpretation? Where is that supposed to happen? Well, I'd like to backtrack on one issue first because the issue raised by the attorney general here that this confession never took place and therefore it shouldn't be allowed to go forward was not raised below. It was not raised before Judge Flood. It was not raised in the appellate court. And it was not raised in the PLA. This was a new issue raised by the attorney general's office in this court. And if you decide to consider that issue, I would consider it's not relevant whether or not he, Mr. Muhammad, actually confessed or not. Answer my question. The procedural question I think that we're talking about here is what happened here? The commission has the statutory authority to refer cases to the chief judge. Then when it got there, the state took the position, the special prosecutor took the position that there was a question of law, of statutory interpretation. So my question to you is where is that supposed to, a question of law supposed to be resolved? In the commission or before the court? Well, first, the state's attorney didn't raise that issue before Judge Flood. We're raising the issue. I know, but I just wanted to make it clear that the special prosecutor did not raise that. Right. We're concerned about process. So we've been asked a lot of questions about process. There's nothing about motion to dismiss in the statute, whether it's a motion to terminate, whatever the language is. I'm trying to get below the surface here and what happened here was a question of law was presented. Where do you think a question of law should be resolved? In the commission or before a trial court? I think the commission rightly determined under their rules and procedures that the claim met their definition and that's where we should go from there. And so can a trial court review the statutory interpretation by the commission? I think it could be reviewed as part of the hearing when we put forth our facts, but we never got to that stage. That's not a fact question. The meaning of the statute is not a fact question. It's a question of law. So there's a question of law that's presented and one would think that the question of law would be resolved before an evidentiary hearing. Well, the question of law that was raised before Judge Flood was whether or not he could go forward with a claim. And I believe that the case law says he's entitled to go forward with the claim because of the process he went through at the Torture Commission. So I think it's the Torture Commission. So a question of law as a statutory interpretation can't be resolved by the trial court? I think this particular one could not be resolved at that stage by the trial court. And I just want to point out after five years of litigating the text, we were litigating the definition of tortured confession and the state advanced now this new claim that the definition doesn't count because Mr. Mohammed did not confess. But they refused to look at the actual language of the tortured confession itself, which I believe was duly processed and duly presented to the court. If we take the Attorney General's conclusion, if we take it to the ultimate conclusion, what they are asking the court to do is to require the Turk to go outside the definition of tortured confession that they duly promulgated and conduct an inquiry at every time a claim comes in, ask the victim, are those your actual words? Did you actually say what the defendant is saying or what the police are saying you said? Because if those aren't your actual words, you're out of the box. That's contrary to the intent of the legislature and to the plain language in the definition duly promulgated. And I think this court has long held that the court should interpret a statute that doesn't result in absurd and meaningless, not meaningless because of the intent of the court. And again, I want to emphasize that the Turk acknowledged in its referral that Mohammed denied making the statement. They pointed to the U.S. Supreme Court cases and this court's case in Rice, People v. Rice, that the use of a defendant's coerced confession cannot be justified on the ground that the defendant has denied he ever gave the confession. And when they made their determination to refer Mr. Mohammed's claim to the court, they determined that denying the statement was not disqualifying because it fell under Turk's definition of tortured confession. Again, a definition which was approved by the legislature and in furtherance of the Turk Act. Again, this was also not an argument that was raised before the judge and before the appellate court that the definition doesn't even come into play because he didn't confess. It's kind of a circular argument that the attorney general is making. But again, the spirit and the purpose of the Turk Act and the JCAR committees concluding that the tortured confession was the right definition for the act. I think the Brady violations are getting into a whole different sphere. And basically the court was not, the torture commission was not looking at the Brady violations per se. They were using them as part of the corroboration. They found problems with the state attorney's office, with the Chicago police and with Mr. Mohammed. They looked to all of that and they were corroborating through their investigation. And the Brady violations were only used to corroborate. I would suggest that the Brady violations are a floor based on the fair decision. Of course, it can be looked at to corroborate. But I think the holding unfair takes the totality of the circumstances a little bit further. And Mr. Mohammed would be able to use this part of his torture claim, the multiple lineups that he was brought into, physically being dragged into those lineups and held in those lineups by the police. And you're not suggesting that through this process, the torture claim, that the Brady claim would be resolved, that the court would be making a decision on whether or not there was a Brady violation? No, Mr. Mohammed did not know at the time that the police and the state attorney were going to withhold all that information. He knows about what happened to him during the interrogations. And that's what we're saying is part of the totality, the lineups themselves. And the AG does not, I'm sorry, the attorney general does not contest that the Miranda violations were also part of the totality of the circumstances. But I would also submit the fabricated confession itself was part of the totality of the circumstances. I would like to address the duty of the prosecutor and why he should be removed in the event that this court agrees that the case should be remanded for a Turk hearing, because I believe he's entitled to the Turk hearing under the statute and it would be unfair to Mr. Mohammed to have the prosecutor continue on this case. Do you have to show that there was an actual conflict? Yes, and I believe we have. Okay. The actual conflict is outlined in our, in Professor Kent's affidavit, which is in the record at C1056 and at paragraphs 22 through 31. Mr. Milan's actual conflict centers on his personal interest in defending the probity of his own past conduct and in failing to supervise his subordinates, which could, and we submit did in fact, cause him to deviate from his duty to do justice to the defendant. He was the supervisor. He had an ethical duty to actually supervise his underlings, and he faces discipline for not properly. He faces, not necessarily gets, but he faces. This is a serious matter to have a supervisor take responsibility for their subordinates, and Mr. Milan has never done that. Other than the fact that his title was either first assistant or supervisor, the following review, are there any specific facts of what he did or suggestions of something he didn't do? Are there any specific facts that are the basis of your claim of an actual conflict? We have no facts that he was actually in the interrogation rooms or anything putting him there. His role as supervisor is what gives him the actual conflict because he had a responsibility. Do you have anything in the record to explain what that means to be a supervisor? Was it, you know, 200 people and, you know, what does it mean to be a supervisor? You're tying everything to his title. Is there anything in the record that shows us what his specific duties were? Your Honor, part of the problem that we had was that I was not allowed to get discovery on this issue. So no, we don't have the job titles, but we have two different titles, and I don't want to confuse them. He was supervisor while Mr. Muhammad was being tortured and tried. He was supervisor of the felony review and the trial lawyers. That was one title. That is a more limited pool. Later, he became first assistant. That was later when he hired Mr. McDermott. He was first assistant, which is basically the managing partner of the Cook County State's Attorney's Office. Those are years apart, but I think we brought up the whole fact of Mr. McDermott being hired by them because that's what led to the conflict. The State's Attorney's Office looked at the fact that Mr. Muhammad was tortured or alleged torture by Mr. McDermott when he was in the police department, and Mr. McDermott was then hired by Mr. Milan when he was managing partner. Was he hired personally by Mr. Milan? He was hired. I don't know. We don't have those records because that was not... So it seems like, you know, your can you demonstrate that he took that would actually show an actual conflict. It seems to be based on speculation. Well, the rules of ethics are clear what his responsibility is, and that's to supervise these people. And here's what we know his subordinates did. Subordination of perjury by witnesses. They threatened witnesses. They pretended to be counsel. They were hiding exculpatory evidence. These are the allegations that we make against the state's attorneys who were being supervised by Mr. Milan at the time that these actions were taking place. So those are not... Those are specific. We don't know other than his role as supervisor, but the ethics rules say as supervisor, he has responsibility. He has to supervise them, and he has to make sure that they're following the law and their ethical responsibilities. So you have proof that the prosecutors, his underlings, were doing this as it relates to his case? Correct. In Mr. Mohamed's case, what we're alleging is they were subordinating perjury by witnesses. They were threatening witnesses. They were pretending in the felony review process to be a defense counsel, and they were hiding exculpatory evidence. All of this was happening in Mr. Mohamed's case while Mr. Milan was supervising those individuals. You say that's what you allege. That's what we allege. Yes. We have not gotten to the stage to be able to prove this, and that is our burden, is to prove this. But, again, Mr. Milan has taken no responsibility for his subordinates, and we believe that the ethics rules are clear. He's got to take responsibility for his underlings. And also, I... Wait a minute. Do you understand the burden issue? You said you have not had... You've been not able to prove what specific conduct Milan had in relationship to the specific state's attorneys involved in this case, right? You've not had an opportunity to do that. You don't have the evidence to do that. No, we were not allowed to get the discovery. Is it your burden to come forward? It's our burden to prove Mr. Milan... Mr. Mohamed is entitled to relief under the Turk Act. No, no, no. I'm back to the issue by disqualification of the prosecutor. Is it your burden to show facts that demonstrate an actual innocence claim? An actual... I'm sorry. An actual conflict claim? If I understand your question, I think we've shown the actual conflict, and I'm not... I think he was a supervisor. He said my burden... Can I ask, just by saying he's a supervisor, can I ask one last question, so I know you're laying this out? It's been argued here that your argument here rose deep into the history of this case, that Mr. Milan was involved with this case in terms of the referral of the commission, especially the referral of the prosecutor, for years, that you participated in many conferences with him. I think there was a Zoom meeting with your client and Mr. Milan and yourself. And it was only after Mr. Milan took his position that we've been discussing about the question of law that was the first time you raised these issues. So can you explain to us how that fits in? Yes, I can. Because I did not know Mr. Milan had the position of supervisor of felony review and supervisor of the trial lawyers, trial attorneys, while my client's claim and trial was going on. I learned that after, at the same time. And I explained about the motion that he filed, the motion that he called the motion to terminate, I call a motion to dismiss. He filed that motion after I presented to him evidence of the wrongdoing by the state's attorney's office, not knowing that he had any role in this case or that he was high up in the state's attorney's office. So it was part of my evidence to him to show why my client should get a second look before a hearing. And after I submitted that to him, he decided that he's going to move to terminate this case. So it's kind of, I didn't know. No one told me. I think he had the responsibility of saying, and I think the rules are clear, that he had the responsibility of bringing up his own actual or potential conflict. He never mentioned it. I found out when I got this motion, which was replete with false facts. How did you find out? I asked around for criminal defense attorneys. I don't do criminal defense. When I got this motion that was so out of the ballpark with wrong, false facts, and I was like, what's going on with this guy? And I asked people and they said, did you check to see where he was in relation to your client's case at the state's attorney's office? And that's when I did a FOIA request to the state's attorney's office. I did a request to Mr. Milan. I sent him a letter. I said, can you tell me what role you had at the state's attorney's office when my client's case was pending? He ignored the letter. I got a FOIA request. I found out that he was the head of the felony review and a head of the trial lawyers. At the very time, my client was claiming he was the head of the trial lawyers. I'm not sure if that completely answers. If there's nothing more. Thank you. Okay. Thank you very much. Counselor Lapline. So I first would like to very briefly circle back to Justice Holder White's question about whether the referral decision, I think I cited People v. Mitchell. It's actually, I was close. It's actually Mitchell v. People. That's on page 30 of our opening brief. The first district said that if the commission refers a case that's outside of its jurisdiction, that referral decision is void. And of course, the only way for a void decision to be reviewed is by a court. We don't entrust agencies to review the propriety of their own decisions. I'd like to also briefly touch on the forfeiture argument that was raised. Of course, this court has recognized repeatedly that parties forfeit issues, not arguments. And people have taken exactly the same position on the same issue at all levels of this litigation. The issue in the trial court was whether the petitioner had stated a claim of torture under the act. People took the position on that issue that he had not. That was the same position they took in the appellate court, and that was the same position they took in their PLA. To be sure, they did not raise this statutory interpretive argument below. But the statute means what it means. The people can't have forfeited the meaning of the act. We're talking about the review of the ability for the circuit court to review the decision of the administrative agency. When they do so, because JCAR has, you know, they have voted on and they have defined the claim of abuse to review? No. So the court's role is to construe the language of the act. If there's ambiguity in the act, then the court looks to the regulatory definitions. But the regulatory definition is secondary. It is an interpretive tool for the plain language of the act. If the act says that a claim must be raised within 10 months and the agency says, actually, it can be raised within 20 months, that administrative rule construing 10 months as 20 months is simply invalid. The agency is bound by the statutory language that gives its authority. If it acts outside of that language, even if it purports to do so on the basis of the regulation or the definition it's promulgated, that simply has no legal effect. That's why the fact that the regulation was sort of procedurally promulgated correctly is irrelevant. If it is substantively contrary to the actual legislature's language that it used in the enacting statute, it doesn't matter. So it's your position that the administrative agency in JCAR had their definition of tortured confession has no weight of authority at all in the circuit court? To the extent that it is contrary to the plain language of the act, it has no authority. We would note that the commission to the extent that it's construed as covering statements that he denies making. I would also like to note that it is not... That's getting a little far afield. So tortured confession isn't defined in the act, is it? That's correct, it's not. So the definition that is defined by the commission, by the administrative rules, that is the definition that is to be used for interpretation? If it is not contrary to the plain language of the act, and we would submit that it is, because the clause preceding tortured confession is a person has to assert they were tortured in the confessing to the crime for which they were convicted. And the tortured confession, meaning the confession to the crime for which they were convicted that they assert they made, was used to obtain their conviction. So if the person does not assert that they were tortured in the confessing, then there is no tortured confession under the plain language of Section 5.1. But even if we were to treat those as wholly separate requirements, that a tortured confession is a statement you didn't make at all, but that they attributed to you, he still would not have stated the claim, because he would still then have to have satisfied the independent first requirement that he assert he was tortured in the confessing to the crime for which he was convicted. So even if we could somehow read both of these clauses independently of one another, as though they were enacted as entirely separate concerns, he still would not have stated a claim. I do want to note that our position does not require that a petitioner assert that he used exactly the words that were used. That's actually part of the administrative regulation, what it's getting at, the definition. Any vocalization or gesture, if police torture someone into saying yes in response to their questions, and then they say he admitted that he did such and such and such, his word yes is a confession, even though yes outside of the context of that interrogation wouldn't necessarily, in a totally context-free reading, be a confession to any particular crime. Similarly, if police torture someone until they nod, that gesture would be a confession. And if they say yes, he admitted to all the things that he nodded to, the fact that they weren't verbatim the words he used wouldn't be a defense. Finally, I want to... Can I ask you about the conflict issue? Yes. Do you agree that there is an ethical duty on the part of supervisors to be aware of and supervise the conduct of attorneys who are their subordinates? I apologize. This is not a very helpful answer, but I think it's the correct one. It depends on what the supervisor is. Let me read something that the appellate court said in this, and tell me what you think of it. The appellate court said, moreover, under the rules of professional conduct of 2010, Milan had an ethical duty to supervise the attorneys under his watch. A lawyer having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the rules. Milan is subject to discipline for failing to make reasonable efforts to ensure those attorneys act ethically. Milan had a personal interest in avoiding an evidentiary hearing at which the evidence might have exposed that he violated the rules of professional conduct. Can you give me your reaction to that? Sure. I think there are two reasons that that is mistaken here. One is it rests on the assumption that he had direct supervision of these attorneys, and there isn't anything in the record saying what the hierarchy looks like in the felony review unit, what, if any, direct involvement Milan had with them. But your opponent says that you can't know that unless she gets the discovery, and by keeping her from getting the discovery, she'll never be able to know that. How do you respond to that? The answer is I'm not sure how to respond to that, because Petitioner was able to get documents relating to Milan's involvement in other people's cases. He presented evidence that Milan took statements into other people's cases. Was she able to get specific information as to what Milan's supervisory duties were on a day-to-day basis? Was there any discovery to that extent? Well, counsels represented that she submitted a FOIA request and did receive information related to his role at the office. I don't know to the extent that that response to her FOIA request included that, so unfortunately I can't answer that. I don't know. I would note that the allegations of wrongdoing, this is the second part of my answer to your question, have to do with the Brady violation and intimidation of witnesses. Those are exactly the kinds of claims that State's Attorney's offices defend in post-conviction petitions all the time. So if we need special prosecutors whenever a State's Attorney's office is alleged to have engaged in a Brady violation, an approved violation, any other kind of prosecutorial misconduct... That's not specifically what I'm asking about. I think the allegations that went to McDermott and Burge, they were specific. It wasn't your general garden variety complaints about the State's Attorney's office. It was more specific, and so my question had to do with whether or not there was anything that the defendant's attorney could have gotten that would allow you to answer my question more directly. I don't think there is, and I think the reason for that is because petitioner's allegations actually were not at the State's Attorney's office or any member of the State's Attorney's office had any involvement in the torture or covering up the torture. He did not, as I believe it's below noted, allege that any ASA was involved in his interrogation, that they took his statements. The only time he alleges any misconduct by attorneys at the Cook County State's Attorney's office was a year later when they withheld this Brady material that he said they withheld. So, to the extent that there, I don't think there is anything that he could offer to show that, I see my time's up, may I finish my answer briefly? I don't believe there's anything that he could have... Have you finished? I'm sorry. Oh, I'm sorry. Did you get the answer to your question? Yeah, the answer. Go ahead. If I've answered your question, you're satisfaction, and I'll call it a day. To answer this, this, of course, this special prosecutor idea is a creature of statute. It's real unusual, obviously. It's only involving cities over 3 million, so it's a very pointed statute for a very real important reason, a historic reason. Do you know how long Mr. Milan has been acting as a special prosecutor? I believe it's since 2018. He was the successor to the previous special prosecutor who had been appointed in the sort of Burge-related litigation. So, he had been... When was he the first assistant and when was he the supervisor? I'm sorry, he was appointed as special prosecutor in this case. Oh, no, I really mean... Do you know how long the person who had been the first assistant state's attorney and then also a supervisor of the felony review unit, how long has he been in place, appointed by the chief judge of the circuit court of Cook County? So, he was appointed as the special prosecutor in the Burge-related cases in general, not this case. I'm sorry. The first prosecutor was in 2002. I believe that they retired in 2000... I'm sorry, if you can just... One moment. 2017 was when special prosecutor Milan was appointed as the special prosecutor in these cases. So, according to this theory, he would have to be disqualified in every case, apparently? In all those cases? I just wonder what would the impact of this mean in terms of all these other cases? That seems to be the implication of the position, if it's simply that he was a supervisor of the felony review unit during the Burge era and, therefore, he is necessarily implicated in every case alleging torture during that era, then it would seem to be that he could not... If that was a conflict of interest, then he couldn't represent the people in any of those cases. And, of course, this issue has not been aired before. No. It's not been raised in any way. Okay. Thank you. Thank you very much. For those reasons, I move this matter brief. We ask that you reverse the judgment. Thank you very much. Agenda No. 7, No. 130470, People of the State of Illinois v. Abdul Malik Mohammed will be taken under advisement. And thank you for your argument.